IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NICHOLAS A. JONES,

                       Plaintiff,

   v.                                                          OPINION & ORDER

BETH EDGE and JOANNE GOVIER,                    16-cv-848-jdp

                       Defendants.

---

Plaintiff Nicholas A. Jones is an inmate confined at the Wisconsin Secure Program Facility (WSPF). He brings Eighth Amendment deliberate indifference and Wisconsin-law medical malpractice claims against defendant Beth Edge for mistreating his allergic reaction to protein powder, and deliberate indifference and First Amendment retaliation claims against defendant Joanne Govier for ignoring his complaints of psychological distress.

Defendants have filed a motion for summary judgment on these claims. After considering the parties' briefing on the motion and their disputes of fact over the events in question, I conclude that a reasonable jury could conclude that Edge acted with deliberate indifference or negligence when she initially refused to treat Jones's allergic reaction, and that Govier acted with deliberate indifference when she ignored Jones's complaints of psychological distress. However, I conclude that no reasonable jury could conclude that Edge deliberately prescribed Jones a lotion containing a known allergen or that Govier retaliated against Jones for exercising protected speech. Therefore, I will grant defendants' motion in part.

## UNDISPUTED FACTS

The following facts are undisputed except where noted.

On July 14, 2016, plaintiff Jones was an inmate at WSPF. That morning, he suffered an allergic reaction, likely caused by a protein powder he ingested. Jones sought treatment for his allergic reaction at the prison's Health Services Unit (HSU). The parties' versions of Jones's initial visit to the HSU differ substantially.

Defendant Edge says that Jones, walking normally, presented to the HSU with a rash that was limited to his arms and neck. She says that before she could perform a medical assessment on Jones, he became belligerent toward her and refused treatment because he was concerned that he would be charged a copayment. She says that asked Jones to leave the HSU. She says that although she did not get the chance to perform an assessment on Jones, she observed during their argument that he had no shortness of breath, and when he left the HSU he was walking normally.

Jones says that he arrived at the HSU in a wheelchair, with his face covered in a rash, difficulty breathing, and suffering from severe pain and blurred vision. Although he agrees he discussed a copayment with Edge, he says that he told her he was experiencing a medical emergency and therefore shouldn't be required to make a copayment. He denies becoming belligerent.

Both parties agree that after Edge asked Jones to leave, he returned to his housing unit. Jones says that when he returned to his cell he began vomiting and eventually requested an EpiPen. This prompted the unit staff to contact the HSU, and Jones was soon returned to the HSU for treatment. During this second visit, Jones's allergic reaction was properly diagnosed,

and he was prescribed Benadryl and Dermarest, a lotion containing hydrocortisone, as treatment.

That evening, Jones applied the hydrocortisone lotion to his skin. Shortly thereafter, he began to experience symptoms of another allergic reaction. He was taken to the emergency room. The next morning, he visited the HSU and a nurse practitioner attributed his second allergic reaction to the hydrocortisone lotion.

Two days later, Jones was working on a grievance against Edge when defendant Govier confiscated the grievance. She issued Jones a conduct report for unauthorized transfer of materials to another inmate, and he was disciplined with five days of cell confinement.

Nine weeks later, on September 20, 2016, Govier refused to let Jones out his cell when he requested to visit the dayroom.[1] He says that she told him that he could not exit his cell because he had not scheduled time in the dayroom and because he was arguing with her. He says that he grew increasingly agitated and eventually requested to speak with the Psychological Services Unit. He says he began having troubling thoughts of self-harm, but that Govier told him that he was just seeking attention and that if he was really contemplating self-harm he would have already hurt himself. He says that she then began to ignore his calls on the emergency intercom and that he did not receive help until roughly 30 minutes later, from a different prison official, after Govier's shift had ended.

---

[1] Govier's proposed findings of facts "disputes" Jones's allegations regarding her actions on September 20, 2016, but does not provide her version of events. Dkt. 26, ¶ 34.

ANALYSIS

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, a court must view all reasonable inferences from the facts in a light most favorable to the nonmoving party. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which the party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

A. **Claims against defendant Edge**

   1. **Eighth Amendment deliberate indifference**

Jones brings an Eighth Amendment claim against defendant Edge for her treatment of his initial allergic reaction. There are really two aspects to his claim: (1) Edge's initial refusal to treat his allergic reaction at all; and (2) her subsequent prescription of a lotion containing a known allergen. I will address these aspects separately.

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007). A medical need may be serious if it is life-threatening, carries risk of permanent serious impairment if left untreated, results in needless pain and

suffering, or significantly affects an individual's daily activities. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The parties do not appear to dispute that allergic reactions of the type experienced by Jones may give rise to a serious medical need.

To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). Inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

The first aspect of Jones's claim is that Edge was deliberately indifferent when she turned him away from the HSU without treating his allergic reaction. Edge acknowledges that the two parties dispute the circumstances surrounding this event: Jones says he was transported to the HSU in a wheelchair, was having difficulty breathing, and had a red rash across his face, and Edge says that Jones walked to the HSU, was not having trouble breathing, and did not have red marks on his face. But Edge argues that summary judgment is still appropriate for two reasons: (1) even if a jury believes that Jones should have received immediate treatment, she never drew that inference and therefore was at most negligent; and (2) the disputed facts are immaterial because Jones's suffered no cognizable harm, as he was promptly treated during his second visit to the HSU.

I reject Edge's argument that she cannot be found liable for deliberate indifference because she never actually drew the inference that Jones needed immediate treatment. Edge is correct that to be held liable for deliberate indifference she must have subjectively believed that

Jones needed treatment. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). But to survive summary judgment, Jones need only present facts that, construed in the light most favorable to him, show a risk to his health so obvious that a jury could infer that Edge actually believed treatment was necessary. *Id.* at 842. The version of events presented by Jones, in which he appeared to be suffering from an allergic reaction, could lead a reasonable jury find that these symptoms made it so obvious to Edge that Jones was in need of treatment that she actually believed that he needed treatment.

I also reject Edge's argument that Jones suffered no cognizable harm because he received treatment during his second visit to the HSU. To support her argument, Edge relies on *Williams*, in which the court observed that typically plaintiffs are required to show that a delay in treatment caused some additional degree of harm. 491 F.3d at 714–15. In other words, Edge argues that a mere delay, but not ultimate denial, of treatment bars a successful deliberate indifference claim.

But the *Williams* court recognized that unnecessarily prolonged pain can itself be a form of harm. *Id.* at 716; *See also Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("[U]nnecessary pain can itself be the basis for an Eighth Amendment claim."). Viewing the facts in the light most favorable to Jones, he arrived at the HSU already in severe pain, and was sent back to his cell, where he vomited until he was received an EpiPen and returned to the HSU for treatment. I conclude that a reasonable jury could find that the pain Jones experienced from his allergic reaction was unnecessarily prolonged by Edge's initial refusal to treat him. Therefore, I will deny Edge's motion for summary judgment on the first aspect of Jones's Eighth Amendment claim against her.

The second aspect of Jones's claim is that Edge was deliberately indifferent when she prescribed him the hydrocortisone lotion. Jones argues that Edge was deliberately indifferent because she prescribed the lotion despite knowing that it appeared as a known allergen in his medical file. Edge argues that she did not, and could not, have known that Jones was allergic to hydrocortisone because it was not listed as a known allergen in his medical records until the day after she prescribed it to him, as a result of Jones's reaction to the lotion.

To support his argument, Jones has produced a copy of a page in his medical records that has a handwritten list of his known allergies: seafood, mushrooms, and hydrocortisone lotion. Dkt. 1-3, at 1. However, there are no dates on this page of this record. The accompanying HSU records request form supplied by Jones indicates that he received this page on July 24, 2016, weeks after the incident. Dkt. 1-3, at 2.

This is significant because Edge has produced contemporaneous progress notes from Jones's medical file, dated July 15, 2016, the day after Edge prescribed Jones the lotion, that indicate a nurse practitioner discontinued Jones's hydrocortisone prescription and "added [hydrocortisone] to allergy list." Dkt. 19-3, at 21. Jones responds to this evidence by repeating his statement that hydrocortisone was listed in his file as a known allergen when Edge prescribed it to him on July 14, 2016. Dkt. 30, at 1.

As stated above, all facts set forth at the summary judgment stage must be construed in the light most favorable to Jones. But facts require "more than just speculation or conclusory statements." *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003). Here, the only reasonable inference from the facts in the record is that hydrocortisone did not appear on Jones's known allergen list on the day Edge prescribed it to him, but that it was added to his allergy list the

next day in response to his allergic reaction. Only Jones's speculation suggests otherwise. So I will grant summary judgment to Edge on this aspect of Jones's Eighth Amendment claim.

2. **Wisconsin medical malpractice claims**

Jones also brings a Wisconsin-law medical malpractice claim against defendant Edge. This claim, like his Eighth Amendment claim, is based on her treatment of his allergic reaction and has the same two aspects: (1) her initial refusal to treat the allergic reaction at all; and (2) her subsequent prescription of a lotion containing a known allergen. For the same reasons discussed above, I find that no admissible evidence supports Jones's claim that Edge knew he was allergic when she prescribed him the hydrocortisone lotion, so I will grant her motion on that aspect of his claim. That leaves only Jones's claim that Edge's initial refusal to treat him was medical malpractice.

Under Wisconsin law, "[a] claim for medical malpractice, as all claims for negligence, requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. Although Wisconsin medical malpractice cases typically require expert testimony to establish the appropriate standard of care, no expert is necessary when common knowledge provides a basis for finding negligence. *Gil v. Reed*, 535 F.3d 551, 557–58 (7th Cir. 2008) (concluding that under Wisconsin law expert testimony is not needed to establish the standard of care when a plaintiff "show[s] that an ordinary person could conclude from common experience that he could not have been injured had his medical providers exercised care."); *Christianson v. Downs*, 90 Wis. 2d 332, 338, 279 N.W.2d 918, 921 (1979) ("Unless the situation is one where the common knowledge of laymen affords a basis for finding negligence,

expert medical testimony is required to establish the degree of care and skill required of a physician.").

Here, I conclude that an ordinary layperson could conclude that failure to treat a patient presenting with a serious allergic reaction was negligent. Therefore, I will deny Edge summary judgment on this aspect of Jones's medical malpractice claim.

**B. Claims against defendant Govier**

    **1. Eighth Amendment deliberate indifference**

Jones brings an Eighth Amendment claim against defendant Govier, alleging that she acted with deliberate indifference when she ignored his complaints of psychological distress in September 2016. To prevail on his claim, Jones must show that he "suffered an objectively serious harm that presented a substantial risk to his safety" and that Govier knew of and "intentionally disregarded the risk." *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). Govier concedes that, construing the facts in the light most favorable to Jones, the second element is satisfied. But she argues that Jones cannot satisfy the first element because he never actually attempted self-harm, and therefore "there is no evidence of injury or harm." Dkt. 24, at 14.

I might be persuaded by Govier's argument if actionable harms under the Eighth Amendment were limited strictly to physical harms. But as I have explained before, "an actionable harm under the deliberate indifference standard need not inflict physical injury; psychological harm, extreme indignities, or 'heightened risk of future injury' can all violate the Eighth Amendment." *Ards v. Anderson*, No. 16-cv-341 2017 WL 6734189, at *7 (W.D. Wis. Dec. 29, 2017) (footnote omitted) (quoting *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013)); *see also id.* at *7 n.4 (collecting cases). Viewing the facts in the light most favorable to

9

Jones, he was experiencing troubling thoughts of self-harm and requested help, but Govier ignored him. I conclude that a reasonable jury could find that this caused him psychological harm and will therefore deny Govier's motion for summary judgment.

I note that because I am allowing Jones to proceed on this claim based solely on psychological harm, without an accompanying physical injury, 42 U.S.C. § 1997e(e) prevents him from obtaining compensatory damages on his claim. *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003). However, he may still be able to recover nominal damages of $1, as well as punitive damages. *Id.* at 942. To recover punitive damages at trial, Jones will have to prove that Govier acted with "evil motive or intent" or with "reckless or callous indifference" to his rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

### 2. First Amendment retaliation

Jones also brings a First Amendment claim against Govier, alleging that she ignored his psychological distress in retaliation for his filing a grievance against Edge. To succeed on this claim, Jones must show that: (1) he engaged in an activity protected by the First Amendment; (2) Govier took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in Govier's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Here, I conclude that Jones meets the first two prongs. First, Jones has a First Amendment right to file legitimate grievances and lawsuits without the threat of retaliation. *See e.g., Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Second, I conclude it is likely that ignoring a serious medical need would deter a person of ordinary firmness from exercising their First Amendment rights. However,

because Jones has not produced evidence that would allow a reasonable jury to infer Govier was motivated by retaliatory intent, he cannot satisfy the third prong.

In evaluating whether Jones has shown that a reasonable jury could infer that Govier was motivated by a retaliatory motive, I note that he has submitted no proposed findings of fact regarding this issue. In his verified complaint, he did set forth a timeline that suggested Govier's actions could have been motivated by Jones's filing of a grievance. I therefore allowed him to proceed on his retaliation claim. Dkt. 7, at 5. But Jones has produced no evidence regarding Govier's potentially retaliatory motive beyond the fact that nine weeks after she confiscated his grievance, she ignored his psychological distress.

Although Jones is entitled to rely on "[c]ircumstantial proof, such as the timing of events . . . to establish the defendant's retaliatory motive," *Massey v. Johnson,* 457 F.3d 711, 716–17 (7th Cir. 2006), suspicious timing alone is almost never sufficient to establish a retaliatory motive. *Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). This is because "[s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). There may be times when a protected activity and an adverse reaction are so close in time that a jury may reasonably infer the two are linked, but these situations are typically limited to when the two events are "no more than a few days" apart. *Id.*

Here, I conclude that a nine-week span between Jones filing his grievance and Govier ignoring his psychological distress is, without any other evidence, nowhere near enough to allow a jury to infer that Govier's actions were motivated by Jones's grievance. Therefore, I will grant Govier summary judgment on Jones's First Amendment retaliation claim.

ORDER

IT IS ORDERED that:

1. Defendants Edge and Govier's motion for summary judgment, Dkt. 23, is GRANTED IN PART, as discussed in the opinion above.

2. Plaintiff Jones may proceed to trial on his remaining claims:

    - Eighth Amendment deliberate indifference and Wisconsin-law medical malpractice claims against defendant Beth Edge based on her initial refusal to treat Jones's allergic reaction.

    - An Eighth Amendment deliberate indifference claim against defendant Joanne Govier based on her ignoring his psychological distress.

Entered May 21, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge